## WALKER v. WALKER.

Common Pleas Court, Lake County.

No. 21725.   Decided March 16, 1948

Murray N Goodrich, Painesville, for plaintiff.
Charles P. Baker, Jr., Painesville, for defendant.

### OPINION

By SLOCUM, J.

The plaintiff filed an action for divorce against his wife setting forth in the petition that the parties were married on

July 27, 1917, at Cleveland, Ohio, and that three children were born as the issue of the marriage, to wit: Mrs. Lois Emerson, age 28 years and married; Jean Dutton, age 24 years and married; and Lester L. Walker, age 23 years and single. He further alleged that he had always been a dutiful husband, that he was 69 years of age, his wife about 60 years old, and that he was the owner of a Plymouth automobile, and she the owner of some real estate. He prayed for divorce and a share of said property.

The defendant in her answer admitted the marriage, birth of the children, and the ownership of the property, and in her cross-petition alleged that her husband was receiving three pensions; a Spanish American War Pension, a railroad retirement pension, and a social security pension totaling some $160 a month. The plaintiff's reply merely denied the allegations of the cross-petition which were not admissions of the allegations of the petition.

When the plaintiff had submitted all his evidence and some of the defendant's witnesses had testified out of order, with the consent of counsel, apparently the plaintiff thought the case was not shaping up in his favor as his counsel thereupon withdrew the petition and moved for a dismissal of the cross-petition on the ground that the parties were first cousins and therefore not legally married. The Court reserved ruling on this motion, it being admitted by the parties that they were first cousins, and heard the balance of the defendant's testimony and rebuttal testimony by the plaintiff himself.

The evidence showed that the defendant inherited the real estate described in the petition and cross-petition, that it had been improved during the marriage and that plaintiff's pensions totaled $175 per month or more. The son and daughter testified on behalf of the mother and against the father. It also showed that the parties secured a marriage license in Cleveland and were married there when he was about 39 years old and she about 30 years of age. It tended to show that the defendant was a long suffering woman, a good and economical housekeeper, and a loving mother to their three children through the years of abuse by her husband. He was, until the past five years, a heavy drinking man, who on occasions hurled such missiles as a coffee cup and a can of milk at her, and on one occasion hit her in the lip with a brush so that it was necessary to have four stitches taken. He also threatened her with a headhunter's knife, a souvenir of his experience in the Spanish War. In 1942 he was convicted of driving while under the influence of intoxicating liquor and his license was suspended. In the past

seven years, his exceedingly generous nature induced him to buy his wife a bathrobe, a hat, and a pair of shoes. Apparently this was all he thought she deserved after he kicked her out of his bed some seven or eight years ago. Even while the divorce was in the process of being heard, he went to the Painesville Post Office where his son was employed and caused him trouble and embarrassment over the family difficulties.

With this evidence in mind, it is inconceivable to the Court that this marriage can be declared void and that this erstwhile plaintiff who has a moderate pension and admitted that he would be able to go back to work can through this contemptible attempt to declare the marriage void, escape the obligation to give some support to his wife.

Sec 11181 GC, provides who may contract matrimony as follows: "Male persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage."

This Statute does not declare the marriage of first cousins void.

Sec 13023. GC, makes a felony of cohabitation between persons of nearer kin by consanguinity or affinity than first cousins. It therefore does not make it a crime for first cousins to live together. Common law marriage is and has been recognized for many years in Ohio as a legal marriage.

Certainly these parties, as the evidence well showed, have gone through all the actions through may years to show a common law marriage.

The Third Edition of Keezer Marriage and Divorce, Section 217 states: "Generally marriages within the prohibited degrees of relationship are voidable and not void unless expressly otherwise by statute. Such marriages are subject to collateral attack, only where held to be void and not where they are merely voidable and thus subject to an action to annul."

A distinction has been very definitely drawn between marriages of cousins from those of closer relationships where the relation constitutes a felony. L. R. A. 1916C, pages 727 and 728 state as follows: "So, where the statutes prohibit marriages between certain relatives, and provides that, in cases of doubt, action may be instituted to determine the validity of a marriage, it has been held that marriages within the prohibited degree of consanguinity are not void, but are voidable only."

Lamneck Ohio Divorce and Alimony, Section 173, page 200, par. 13 states: "Persons nearer of kin than second cousins cannot be licensed to marry in Ohio, but due to the fact that

there is no provision in Ohio which renders such a marriage void, it is merely voidable during the lifetime of the parties at the option of either."

In the case of **Evans v. Reynolds, 32 Oh St 163,** gives the rule that a marriage solemnized in due form is presumed lawful until some enactment which annuls it is produced and proved by those who deny its validity.

The plaintiff based his claim that the marriage of cousins is void largely on the case of **Heyse v. Michalske,** 6 Ohio Supp. 33, **31 Abs 484.** This case was decided by the Probate Court of Cuyahoga County and a very careful and able opinion was rendered by Judge Brewer. The syllabus of the case reads as follows: "A marriage between an uncle and niece in Ohio is void ab initio and can be collaterally attacked, though both parties are dead."

However, it should be noted that in this case, the marriage was between an uncle and niece and that none of the cases cited in it involved a marriage between cousins. Also the court apparently based its decision largely on the fact that a marriage between an uncle and a niece or co-habitation between the two would amount to a felony.

Judge Vickery in the case of **Slovenian M. Benefit Ass'n v. Knafelj, 36 Oh Ap 562,** on page 565 of the opinion, 173 N. E. 630, 631, gives the following rather interesting dictum: "It is true that, under the laws of Ohio, if she were his first cousin he could not marry her; but they could go to the state of Michigan, or the state of Georgia, and perhaps many other states in the United States, and intermarry, and then come right back into Ohio and the marriage would be legal."

The erst-while plaintiff by dismissing his petition apparently seeks the result of an annulment of the marriage which is really an action in equity, **Waymire v. Jettmore, 22 Oh St 27,** and therefore the principles of equity should apply. One of these well known principles is:

"He who comes into equity must come with clean hands." Certainly the hands of this plaintiff are far from clean. This is particularly true where children are involved. The court in the case of Rooney v. Rooney, 54 N. J. Eq. 231, 34 A. 682, 683, held in part as follows: "Counsel for defendant took the further ground that, admitting the first marriage, and the continued life of the first wife, yet the complainant procured the defendant to marry him by practicing upon her a fraud so gross as to close against him the door of a court of equity. It is hardly necessary to cite authority for the position that a complainant who comes into court under the cir-

cumstances above stated, and asks a decree of nullity, the result of which is to declare one whom he has sworn to love and cherish as a wife to be no more than a concubine, and her offspring, the fruit of the unlawful communion (born pending the suit), a bastard, must prove his case with the utmost strictness. The same rule applies in such a case on an indictment for bigamy. The court in such cases is bound to act as the guardian of the helpless infant, and watch its rights and interests with jealous care."

The Court is of the further opinion that even if this marriage were to be declared void that still this plaintiff could not attain his apparent wish to escape all further support of his wife and a division of property rights. In this regard 35 Amer. Jur. Par. 53, page 216 states as follows: "It is a general rule that when a woman in good faith enters into a marriage with a man who is incapable of contracting marriage because of some impediment, or when both of the parties enter into a void marriage in good faith, the woman is entitled to a division of the property accumulated by the joint efforts of the parties during their relationship, and on an annulment of a marriage the Courts usually assume jurisdictions to make an equitable division and settlement of the property acquired during cohabitation of the parties, either by way of a division of the property or an allowance to the wife in the nature of alimony, at least, where she has lived as the wife of the other party in good faith. * * *"

Therefore, the Court feels that since these parties obtained a license to marry, were married, have lived together as husband and wife for some thirty years, raised three children who in turn have had children, that the elements of at least a common law marriage have been fully established and that the evidence showed that the defendant is entitled to a divorce on her answer and cross-petition on the grounds of gross neglect of duty and extreme cruelty. She should be awarded the real estate which she has inherited together with the furniture in the house, and the sum of $10 a week for her support as well as $150 for her expense for the prosecution of this action.

Prevailing counsel will therefore draw a journal entry in accordance with this opinion and submit the same to opposing counsel and the Court for approval, noting proper exceptions.